# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RUTH A. ORTS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 5:11-512 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Plaintiff Ruth A. Orts ("Orts") brings this action under 42 U.S.C. § 405(g) for review of a decision denying her application for disability-based benefits under the Social Security Act. Complying with General Order # 18, the parties join issue through competing briefs.[1] Orts requests judgment reversing and remanding the case for an award of benefits, or, alternatively, further proceedings (Dkt. No. 11); the Commissioner of the Social Security Administration ("Commissioner") requests affirmance. (Dkt. No. 14).

## I. Background

Orts applied for disability insurance ("DIB") and supplemental security income ("SSI") benefits claiming disability due to: *depression, anxiety, asthma, hepatitis C* and *panic attacks.* (T. 111-15, 116-19, 139).[2] Orts's applications were filed on October 8, 2008, and December 5, 2008, respectively, and both alleged

---

[1]    General Order #18 is dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders). (Dkt. No. 3).

[2]    "T." followed by a number refers to the page of the administrative record. (Dkt. No. 8).

that her disability commenced on August 1, 2006. (T. 139). After being denied benefits initially (T. 45-46), Orts requested a hearing before an administrative law judge ("ALJ"). (T. 76-78).

ALJ Susan Wakshul ("ALJ Wakshul") conducted a video evidentiary hearing on April 22, 2010. (T. 6-44). Orts was represented by counsel, Jason Mintz, Esq. at the hearing. (T. 6). Orts testified that she has additional physical impairments not listed in her applications, *viz.*, left shoulder and right knee dysfunction, plus obesity. A vocational expert, George Starosta, gave his opinions as to whether Orts's combined impairments (a) prevent her from performing her past relevant work, and (b) erode her unskilled sedentary occupational base.[3]

On April 29, 2010, ALJ Wakshul denied Orts's applications. (T. 51-63). Orts appealed to the Appeals Council of the Social Security Administration's Office of Hearings and Appeals. (T. 109). The Appeals Council denied Orts's request to review. (T. 1-5). This rendered ALJ Wakshul's opinion the final decision. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Represented by new counsel, Orts timely instituted this case on May 4, 2011. (Dkt. No. 1).

## II. Preliminary Discussion

An initial discussion of the Social Security programs at issue and the administrative decision-making process (including certain terms of art) will aid comprehension of Orts's underlying claim, ALJ Wakshul's decision and Orts's challenges thereto.

---

[3]     ALJ Wakshul presided over the hearing from Baltimore, Maryland. Orts appeared and testified through interactive video in Syracuse, New York. The impartial vocational expert, George Starosta, appeared by telephone. (T. 8, 51).

*A.     DIB And SSI Programs; Eligibility for Benefits*

*Disability Insurance benefits*, authorized by Title II of the Social Security Act and funded by social security taxes, provide income to insured individuals forced into involuntary, premature retirement by reason of disability. *Supplemental Security Income* benefits, authorized by Title XVI of the Social Security Act and funded by general tax revenues, provide an additional resource to assure that disabled individuals' income does not fall below the poverty line. Applicants seeking benefits under either of these statutory provisions must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs, *viz., "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See* 42 U.S.C. §§ 423(d)(1)(A)*,* 1382c(a)(3).

While this eligibility standard is straightforward and simple in concept, it is difficult to satisfy due to the stringent and rigid disability definition established in the Social Security Act, *viz.,* inability to engage in *any* substantial gainful activity. "The mere presence of a disease or impairment alone, however, is insufficient to establish disability; instead, it is the impact of the disease, and in particular any *limitations it may impose upon the claimant's ability to perform basic work functions*, that is pivotal to the disability inquiry." *Pavia v. Astrue*, No. 5:10–CV–818 (GTS/DEP), 2012 WL 4449859, at *8 (N.D.N.Y. Aug. 20, 2012) (citing *Rivera v. Harris*, 623 F.2d 212, 215-16 (2d Cir. 1980)) (italics added); *see also Carroll v. Secretary of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir. 1983); *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983). Neither is a showing of generalized disability sufficient. Rather, a claimant must also prove inability to engage in *any* form of substantial gainful employment.

This standard is so rigorous that one federal court of appeals has described it as bordering on the unrealistic.[4] Thus, a person who might well be considered by a member of the general public, or, for that matter, by a court, to be disabled in the ordinary sense of the word, may not be disabled within the specialized meaning of the Social Security Act.

## B.    *Sequential Evaluation Procedure*

The law requires *individualized* determinations.  *See Heckler v. Campbell*, 461 U.S. 458, 467 (1983).  Hence, Commissioner Astrue generally must make both medical and vocational assessments in every case.  Given the volume of claims presented on a nationwide basis, this is a huge task.

To accomplish this, the Commissioner utilizes a five-step, sequential evaluation procedure for adjudicating disability-based claims.  *See* 20 C.F.R. §§ 404.1520(a), 416.920.[5] This model is "sequential" in the sense that when a

---

[4]    *See Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir. 1981).

[5]    In this circuit, the Commissioner's five-step sequential procedure is described as follows:

1.    The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.    If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3.    If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment [that meets or equals a] listed [impairment] in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.    If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.    If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1520, 416.920)).

decision can be made at an early step, remaining steps are not considered. *See* 20 C.F.R. §§ 404.1520, 416.920. This evaluation process has judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler*, 461 U.S. at 461) (use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations")).

## C.  *Residual Functional Capacity*

When making findings at Steps 4 and 5, an ALJ must first assess and articulate a claimant's "residual functional capacity" ("RFC").  This term refers to what claimants can still do in a work setting despite their physical and/or mental limitations caused by their impairments and any related symptoms, such as pain. *See* 20 C.F.R. § 404.1545, 416.945(a); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC).  Administrative law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. *See* SSR 96-8p, TITLE II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 61 Fed. Reg. 34474, 1996 WL 374184, at *4 (SSA July 2, 1996).

Determining RFC often is crucial to a final decision.  Commendably, the Commissioner provides detailed guidance for claims adjudicators in the form of both a formal regulation and an internal policy ruling.  Collectively, these directives (a) identify various ordinary physical functions to be considered in context of an ordinary work schedule, (b) require function-by-function assessments of those activities, and (c) dictate that the ultimate RFC determination account for limitations imposed by both severe and non-severe impairments.  *See* 20 C.F.R. §§ 404.1545(a)(2), 404.1545(b), 416.945(a)(2), 416.945(b); SSR 96-8p, 1996 WL 374184, at **5, 7.

### III.   Developing and Evaluating Evidence

Determining residual functional capacity is easier said than done.  First, there must be a sufficient evidentiary basis for making a meaningful determination.  Second, that evidence must be weighed properly.  This section discusses principles that govern these bedrock requirements.

*A.    Developing The Record*

"Social Security disability determinations are investigatory, or inquisitorial, rather than adversarial."  *Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009) (internal quotation marks omitted).  "It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits."  *Id.* (internal quotation marks omitted); *accord Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).  The converse of this proposition, however, also is true.  "Specifically, where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c) (ALJ required to obtain additional evidence – including recontacting medical sources – only when ALJ cannot decide whether a claimant is disabled based on existing evidence).

*B.    Credibility Assessments*

Assessing claimants' residual functional capacities involves consideration of often-conflicting testimony and other forms of evidence.  In almost every instance, an administrative law judge must make a credibility assessment, that is, decide how much weight to give to a particular item of evidence.  This section delineates principles that guide and govern this procedure.

1.    <u>Subjective Testimony</u>

Pain is an important element in disability claims, and pain evidence must be thoroughly considered.  *See Ber v. Celebrezze*, 332 F.2d 293, 298-99 (2d Cir. 1964).  The best-informed (sometimes *only*) source of information regarding intensity, persistence and limiting effects of pain and other potentially disabling symptoms is the person who suffers therefrom.  Testimony from claimants, therefore, is not only relevant, but desirable.

On the other hand, such testimony is subjective and may be colored by the claimant's interest in obtaining a favorable outcome.  Hence, subjective symptomatology by itself cannot be the basis for a finding of disability.  A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged.  *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, POLICY INTERPRETATION RULING TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996);  SSR 96-4p, TITLES II AND XVI:  SYMPTOMS, MEDICALLY DETERMINABLE PHYSICAL AND MENTAL IMPAIRMENTS, AND EXERTIONAL AND NONEXERTIONAL LIMITATIONS, 61 Fed. Reg. 34488-01, 34489, 1996 WL 362210 (SSA July 2, 1996).

An ALJ is tasked with making credibility assessments, *i.e.*, deciding how much weight to give claimants' subjective self-evaluations.  Fortunately, the Commissioner again provides explicit guidance in this area.  First, a formally-promulgated    regulation    requires—once    an    impairment    is

identified—consideration of seven specific, *objective* factors that naturally support or impugn *subjective* testimony of disabling pain and other symptoms.[6]

Second, SSR 96–7p directs ALJs to follow a two-step process to evaluate claimants' allegations of pain:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .

> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

SSR 96-7, 1996 WL 374186, at *2. The Ruling further provides that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

Governing circuit law generally mirrors the Commissioner's Ruling. Thus, when an ALJ rejects a claimant's testimony of pain and limitations, he or she must provide explicit reasons for rejecting the testimony. *See Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988); *Carroll*, 705 F.2d at 643.

---

[6] An ALJ must evaluate a claimant's symptoms, including pain, based on the medical evidence and other evidence, including he following factors:

(i)    claimant's daily activities;
(ii)   location, duration frequency, and intensity of claimant's pain or other symptoms;
(iii) precipitating and aggravating factors;
(iv) type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
(v)   treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
(vi) measures claimant uses or has used to relieve pain or other symptoms; and
(vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529 (c), 416.929(c).

2.    <u>Treating Sources</u>

An administrative law judge must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).  When controlling weight is not given a treating physician's opinion (because it is not "well supported" by other medical evidence), the ALJ should consider the following factors in determining weight to be given such an opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Halloran*, 362 F.3d at 32; *Shaw*, 221 F.3d at 134.

A treating physician opinion may be rejected based upon proper consideration of any of these factors.  When treating source opinion swims upstream, contradicting other substantial evidence, such as opinions of other medical experts, it may not be entitled to controlling weight.  *See Williams v. Commissioner of Soc. Sec.*, 236 Fed. App'x 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  A treating physician's opinion may be discounted when it is internally inconsistent.  *See Micheli v. Astrue*, No. 11–4756–cv, 2012 WL 5259138, at *2 (2d Cir. Oct. 25, 2012).  It is not error for an ALJ to refuse to find a physician's opinion controlling, due to the physician's "limited and remote contact." *Petrie v. Astrue*, 412 Fed. App'x 401, 405 (2d Cir. 2011).  Similarly, treating source opinion can be rejected for lack of

underlying expertise,[7] or when it is brief, conclusory and unsupported by clinical findings,[8] or when it appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy is reasonably suspected.[9]

### 3. Other Medical Sources

The Commissioner will consider evidence from "other sources" to show "severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *See* 20 C.F.R. §§ 404.1513(e), 416.913(e). An interpretive ruling likewise states that opinions from "other sources" are "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06–03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE

---

[7]  *See Terminello v. Astrue*, No. 05-CV-9491, 2009 WL 2365235, at *6-7 (S.D.N.Y. July 31, 2009) (affirming ALJ's refusal to give controlling weight to treating physician's opinion that claimant had "no useful ability to work" because of "stress and depression" where treating physician was not a psychiatrist and claimant had "not seen a psychiatrist for depression"); *Armstrong v. Commissioner of Soc. Sec.*, No. 05-CV-1285 (GLS/DRH), 2008 WL 2224943, at *11, 13 (N.D.N.Y. May 27, 2008) (affirming ALJ's refusal to give controlling weight to treating physician's opinion that claimant "had anxiety/depression" where treating physician was not a psychiatrist and had "never treated [claimant] for any of the symptoms" reported to be due to anxiety or depression).

[8]  *See Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005) (finding "good cause" exceptions for giving less or no weight to treating physicians' opinions exceptions, such as "statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by the clinical findings"); *Alvarado v. Barnhart*, 432 F. Supp. 2d 312, 321 (W.D.N.Y. 2006) (treating physician's opinion "must be discounted" where it is "too brief and conclusory [and] wholly unsupported by any medical evidence, treatment notes, specific findings, or clinical or diagnostic techniques").

[9]  *See Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) ("[M]any physicians (including those most likely to attract patients who are thinking of seeking disability benefits,...) will often bend over backwards to assist a patient in obtaining benefits.") (parenthesis in original); *see also Labonne v. Astrue*, 341 Fed. App'x 220, 225 (7th Cir. 2009) ("[A]n ALJ may reject a treating physician's opinion over doubts about the physician's impartiality, particularly since treating physicians can be overly sympathetic to their patients' disability claims."); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)) ("The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is 'leaning over backwards to support the application for disability benefits.'").

FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939, at *3 (SSA Aug. 9, 2006). Specifically, that Ruling provides:

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 C.F.R. §§ 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:
>
> •       . . . nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . . ;
>
> . . .
>
> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source " for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide *insight into the severity of the impairment(s) and how it affects the individual's ability to function.*

SSR 06–03p, 2006 WL 2329939, at *2 (emphasis added).

"Other source" opinions do not enjoy a controlling weight presumption. *See Mongeur*, 722 F.2d at 1039 n. 2 ("diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician."). But, when weighing opinions of "other sources," an administrative law judge looks to the factors enumerated in the Regulation pertaining to evaluating "acceptable medical source" treating opinions (when they are not afforded controlling weight).[10] *See Canales v. Commissioner of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (citing 20 C.F.R. § 404.1527(d) and SSR 06-03p, 2006 WL 2329939, at *4).

---

[10]       "Acceptable medical sources" are set forth in the Regulation as (1) Licensed physicians (medical or osteopathic doctors); (2) Licensed or certified psychologists; (3) Licensed optometrists; (4) Licensed podiatrists; and (5) Qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a).

# IV. Judicial Review

Judicial review of the Commissioner's denial of Social Security benefits is limited. The court's abbreviated role is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, ___U.S.___, 130 S. Ct. 1503 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). When proper principles of law were applied, and when the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g); *Halloran*, 362 F.3d at 31.

Under these constraints, reviewing courts cannot retry factual issues *de novo,* nor can they substitute their interpretations of administrative records for that of the Commissioner when the record contains substantial support for the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Rather, in such circumstances, courts must defer to the Commissioner's resolution of conflicting evidence. *See Behling v. Commissioner of Soc. Sec.*, 369 Fed. App'x 292, 293 (2d Cir. 2010) (citing *Clark v. Commissioner*, 143 F.3d 115, 118 (2d Cir. 1998) ("[I]t is up to the agency, and not this court, to weigh the conflicting evidence in the record.")).[11] Hence, reviewing courts may not overturn the Commissioner's administrative rulings just because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012).

---

[11] "'[The Court] may only set aside a determination which is based upon legal error or not supported by substantial evidence.'" *Monette v. Astrue*, 269 Fed. App'x 109, 110-11 (2d Cir. 2008) (quoting *Berry*, 675 F.2d at 467); *see also* 42 U.S.C. § 405(g).

*A.     Substantial Evidence*

"Substantial evidence" is a term of art.  It means less than a "preponderance" (usual standard in civil cases), but "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson*, 402 U.S. at 401; *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *Halloran*, 362 F.3d at 31.  Stated another way, to be "substantial," evidence need only be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.*, 306 U.S. 262, 299-300 (1939), *cited in* Harvey L. McCormick, Social Security Claims and Procedures §§ 672 (4th ed. 1991).

When conducting a substantial evidence review, a court's responsibility is "'to conduct a searching inquiry and to scrutinize the entire record, having in mind that the Social Security Act . . . is remedial in purpose.'" *Monette v. Astrue*, 269 Fed App'x 109, 110 (2d Cir. 2008) (quoting *McBrayer v. Secretary of Health & Human Servs.*, 712 F.2d 795, 798-99 (2d Cir. 1983)).   In this circuit, courts consider both objective and subjective factors: (1) objective medical facts; (2) diagnoses and opinions from treating and examining physicians; (3) subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) claimant's age, educational background, and work history.  *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983).

*B.     Reviewing Credibility Choices*

Administrative law judges (who usually have the only opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying) obviously are best-positioned to make accurate credibility determinations.  *See Campbell*, 465 Fed. App'x at 7 (function of Commissioner,

not the court, to appraise credibility); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (stating that deference is given to ALJ's decision because he is in the best position to assess the claimant's credibility). Consequently, reviewing courts are loathe to second-guess and overturn credibility choices made by an administrative adjudicator. *See Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'"); *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness.").

Reviewing courts, however, cannot abdicate their statutory duty to determine whether correct principles of law were applied and whether challenged decisions are supported by substantial evidence. Consequently, even credibility choices are examined in that limited context.[12]

## V. The Commissioner's Decision

ALJ Wakshul utilized the sequential evaluation procedure described earlier. She received into evidence Orts's medical records, treating physician statements, examining physician reports, Orts's subjective testimony, forensic reports, and impartial vocation expert testimony. (Dkt. No. 8). ALJ Wakshul

---

[12] When an ALJ neglects to employ the proper legal standard, the court cannot subject his credibility determination to meaningful review. *See Meadors v. Astrue*, 370 Fed. App'x 179, 184-85 (2d Cir. 2010) (Because ALJ eschewed the two-step credibility inquiry required under 20 C.F.R. § 404.1529(c), remand required for a redetermination of claimant's RFC under the correct standard).

noted that she undertook "careful consideration of all the evidence" and "the entire record." (T. 51, 57).

ALJ Wakshul issued a 12-page, singled-spaced decision that is a model of thoroughness and analytical clarity. Her crucial findings and conclusions for purposes of this appeal are as follows:

. . .

3.    The claimant exhibits the following severe impairments: anxiety disorder; hepatitis C; asthma; shoulder and knee dysfunction; and obesity. (20 CFR 404.1520(c) and 416.920(c)).

. . .

5.    . . .[T]he claimant retains the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she requires the option to sit or to stand at will. She should avoid exposure to environmental irritants and concentrated exposure to extremes in temperature, wetness, and humidity. She does not retain the ability to lift above shoulder level. Secondary to her right knee pain, the claimant does not retain the ability to push or to pull with her right lower extremity, or to squat, kneel, crouch, or crawl more than rarely. Secondary to her anxiety disorder, the claimant retains the ability to perform simple, routine, repetitive tasks in a "low stress" work environment (i.e., there are no more than occasional changes in the work setting, and the claimant does not need to use judgment or make decisions more than occasionally). She retains the ability to maintain occasional contact with coworkers, supervisors, and the general public.

6.    The claimant is unable to perform any past relevant work. (20 CFR.1565 and 416.965).

(T. 53, 55, 57, 62).

. . .

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2006, through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).

(T. 62-63).

ALJ Wakshul gave Orts the benefit of every doubt at Step 2 (Finding #3 regarding "severe impairments") and again at Steps 4 and 5 (Finding #5 regarding "residual functional capacity"). She adjudged certain claimed impairments to be severe based on Orts's subjective testimony alone – *i.e.*, left shoulder pain and right knee pain – even though the record lacked diagnostic, objective support. (T. 58-59). She also found Orts"s residual capacity to perform work-related activities as being more limited than did the state agency's disability examiner.[13]

## VI. Alleged Errors

Orts proffers three points of error:

1.  The Residual Functional Capacity determination is unsupported by substantial evidence and is the product of legal error;

2.  AlJ Wakshul failed to apply the appropriate legal standards when she found Orts not credible; and

3.  ALJ Wakshul's Step 5 determination is not supported by substantial evidence and is the product of legal error.

---

[13]      A State DDS Single Decision Maker (D. Mueller) concluded that Orts retains ability to perform exertional requirements of light work on a regular and continuing basis. (T. 338-343). ALJ Wakshul, however, gave this opinion "little weight." (T. 59). Instead, ALJ Wakshul noted that her "very restrictive residual functional capacity assessment gives the benefit of the doubt to the claimant on a number of issues." (T. 58).

This may have been motivated by concern and compassion for Orts's unrelated tragic and dire personal circumstances. In November 2007, Orts's 9 year-old son was diagnosed with leukemia. (T. 265). In June 2008, medical notes reflect that Orts claimed to feel "very stressed out," reporting that her current (second) husband was a drug abuser, her son was sick with lymphoma, and her daughter was borderline schizophrenic. (T. 278, 280-81). In July 2008, she reported that her husband was doing narcotic drugs again and that her stepson was caught stealing from boats at the marina. (T. 283). In September 2008, it was noted that she was still dealing with her husband's drug issues. (T. 292). In October 2008, she reported being in the process of separating from her husband. (T. 294). She left her second husband on November 8, 2008. (T. 46).

While judges's decisions cannot be governed by sympathy, they act commendably, nevertheless, when exerting extra effort to insure that sympathetic claimants are not short shrifted.

(Dkt. No. 11, p. 1). The first two arguments are closely related, and are analyzed at length in Section VII. The third is a makeshift, bootstrapping argument that requires no analysis because it wholly depends on success of the first two arguments.[14] Indeed, if those points are valid, the decision must be reversed, and the case remanded independently of the third point; if those points are not sustained, the third point has no support.

The Commissioner maintains that ALJ Wakshul thoroughly evaluated the evidence in the record regarding Orts's alleged physical and mental impairments and that her residual functional capacity finding is supported by substantial evidence. (Dkt. No. 14, pp. 6-16). The Commissioner further asserts that ALJ Wakshul properly evaluated Orts's credibility. (Dkt. No. 14, pp. 17-20). Last, the Commissioner maintains that ALJ Wakshul correctly found that Orts could do other work. (Dkt. 14, p. 20).

## VII. Discussion and Analysis

When assessing Orts's residual functional capacity, ALJ Wakshul gave no weight to a forensic "Functional Capacity Report (Physical)" submitted by treating physician, Gary Freeman, M.D. and his nurse practitioner, Deborah Freeman, FNP-C, with respect to Orts's *physical* limitations. (T. 419-420). She also gave no weight to Ms. Freeman's similar "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" regarding Orts's *mental* impairments. (T. 415-17). Finally, ALJ Wakshul discounted Orts's subjective testimony as not altogether credible.

---

[14] Orts's third point (consisting of less than one page) argues that ALJ Wakshul posed an incomplete hypothetical question to the impartial vocational expert. This argument is premised on a wholly self-serving assumption that ALJ Wakshul (a) would have found additional impairments, then (b) made a more limiting residual functional capacity finding that (c) then would have been included in the hypothetical question had she either credited Orts's testimony, that of a treating physician and nurse practitioner, or developed the record more fully with a psychiatrist's treatment notes. (Dkt. No. 11, pp. 17-18).

*A.    Rejection of Treating Source Opinion*

Orts makes a three-pronged attack.  First, she argues that ALJ Wakshul committed legal error in not giving controlling weight or substantial weight to opinions of Dr. Freeman and Ms. Freeman with respect to Orts's *physical* limitations.  Second, Orts faults ALJ Wakshul for giving no weight to Ms Freeman's "medical source statement" regarding Orts's *mental* impairments. Third, Orts argues that ALJ Wakshul committed legal error by not developing the record further by obtaining treatment notes from a prior treating psychiatrist, Frances Durgan, M.D., before rejecting Ms. Freeman's statement regarding severity of Orts's mental impairments.

1.    Rejection of the Physical Capacity Assessments

ALJ Wakshul cited all applicable Regulations and Rulings identified earlier.  (T. 57-62).  This indicates her awareness of and intent to follow them. And, when determining Orts's residual functional capacity, ALJ Wakshul fully explained the basis for giving no weight to opinions of Dr. Freeman and Ms. Freeman.  (T. 58-62).

Orts sought treatment for abdominal pain in June, 2008, (about six months before her disability claims now at issue were filed) at FamilyCare Medical Group where the Freemans practice.  She suffered from possible diverticulitis per Ms. Freeman's diagnosis.  (T. 279).  The first mention of Dr. Freeman is his Functional Capacity Report in March 2009.  Orts, however, visited the clinic several times thereafter.

The Freemans submitted a March 19, 2009, forensic "Functional Capacity Report (Physical)" wherein they opined that "calcified tendinitis" prevents Orts from lifting, carrying, standing, sitting, walking, climbing stairs, ladders, stooping, kneeling, or crouching as much as sedentary work requires in an eight-

hour day.[15]  (T. 419-420).  Prior to that report, Orts received treatment at the Freemans' clinic on three occasions (2/12/09, 2/23/09, 3/19/09) as well as physical therapy, and her response was "good."  (T. 419).

One of the six factors governing regulations identify as relevant is consistency of treating source opinion with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  ALJ Wakshul rejected these forensic physical capacity assessments as inconsistent with other evidence of record.  (T. 61).  Accordingly, ALJ Wakshul committed no legal error when rejecting the Freemans' forensic opinions provided that substantial evidence confirms the inconsistency.

Substantial evidence supports ALJ Wakshul's conclusion. First, the Freemans' own treatment notes are inconsistent with their forensic statements.  Orts's physical examinations (*e.g.*, reviews of her musculoskeletal, neurological, and respiratory systems) were generally normal.  (T. 289, 290-91, 292-93, 294-95, 299-300).  Ms. Freeman repeatedly noted that Orts appeared "healthy."  (T. 289, 291, 292, 294, 300, 467, 493).  Although in September 2009, Orts complained of back pain and was advised to take Tylenol (T. 566-67), she denied musculoskeletal symptoms during her next visit a month later in October 2009.  (T. 474).  Likewise, in November 2009, Orts advised Nurse Freeman that she was active during the day.  (T. 477).

Second, Orts's admissions during the administrative hearing regarding her abilities to lift, sit, and stand contradict the Freemans' opinions.  Orts testified that she can lift two gallons of milk, sit for one to two hours, and stand for thirty

---

[15]     "Sedentary work" is defined as work involving occasional standing and walking, lifting no more than ten pounds at a time, and occasional lifting and carrying of light objects.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

minutes at a time. (T. 21-22). She also affirmed that she can stoop–*i.e.*, bend at the waist. (T. 22).

Finally, the Freemans' forensic statements contradict several physicians' reports:

- Karen Bascik, M.D. (gynecologist) opined that Orts had *no limitation* in her ability to lift and carry, sit, stand and/or walk, and push and/or pull (T. 217);

- Kalyani Ganesh, M.D. (consultative examiner) found Orts's chest, lungs, and heart were unremarkable. (T. 334). His examination of her musculoskeletal system revealed full range of motion of the spine and extremities, full motor strength, equal deep tendon reflexes, and no sensory deficit. (T. 335). He also concluded that she had *no physical restriction in standing, walking, sitting, and in the use of her upper extremities.* (T. 335).

- Borys Buniak, M.D. (treated Orts's hepatitis) found in comprehensive general examinations that Orts's *cardiovascular and respiratory examinations were normal.* (T. 423, 426, 429, 432).

- D. Mueller (State DDS) concluded that Orts appeared in no acute distress. Her gait was normal. She was able to walk on heels and toes without difficulty as well as squat full. Her stance was normal. She did not need help changing or getting on and off exam table. She had full range of motion in spine and all extremities. She had 5/5 strength in her extremities. No abnormalities were noted in her joints. No motor or sensory deficit was noted. Likewise, no cyanosis, clubbing or edema in her extremities was observed. Her hand and finger dexterity was intact and her grip strength was 5/5 bilaterally. She had mild exertional limitations due to a history of breathing difficulties. (T. 339-40).

In sum, ALJ Wakshul had ample reasons, all noted in her decision, for declining to adopt the Freeman opinions. (T. 57-62).

Orts offers a fall-back argument that, even if ALJ Wakshul was not required to give *controlling weight* to the Freemans' forensic opinions, she was bound legally to give them at least *some* weight due to their long-standing

treatment relationship with Orts.  Orts relies on an unpublished decision from
this district which states:

> . . . [W]hile an "other source" opinion is not treated with the same
> deference as a treating physician's opinion, the assessment is still
> entitled to some weight, especially when there is a long-standing
> treatment relationship with the claimant.

*Stacey v. Commissioner of Soc. Sec.*, No. 09-CV-0638 (DNH/VEB), 2011 WL
2357665, at *4 (N.D.N.Y. May 20, 2011).  Orts implicitly argues that ALJ
Wakshul committed legal error when giving the Freemans' forensic report *zero*
weight, as opposed to *some* weight.  (Dkt. No. 11, p. 13).

Length, nature and extent of a treatment relationship most assuredly are
regulatory factors relevant to weighing treating source opinions.  Nothing in
*Stacey*, however, suggests that these factors cannot be trumped by others.  And,
as a threshold matter, it is debatable whether *Stacey* and cases cited therein can
be applied as broadly and absolutely as Orts advocates.[16]   In any event, it is
unnecessary to debate this largely academic point now because the record clearly
discloses that ALJ Wakshul *did* consider and give some weight to the Freemans'
*medical* opinions when she determined Orts's residual functional capacity.  As

---

[16]     The Second Circuit has never ruled directly on the question of
whether treating source opinion always is entitled to at least some weight.  By
inference, however, the court has suggested several times that it is not error
to afford no weight to treating physician opinion when good reasons exist.  *See
Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); *see also Foxman v. Barnhart*,
157 Fed. App'x 344, 357 (2d Cir. 2005) ("An ALJ is entitled to give greater
weight to the opinion of a non-treating physician-*and even to disregard the
opinion of a treating physician altogether*-but only if the ALJ's decision is
based upon proper consideration" of the factors in 20 C.F.R. § 404.1527(d).)
(emphasis added).
        The Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh
Circuits have stated directly that when good cause or good reasons exists, an ALJ
may afford no weight to treating source opinion. *See Payton v. Astrue*, No.
11-6199, 2012 WL 1573644, at *4 (10th Cir. May 7, 2012); *Simone v. Commissioner
of Soc. Sec. Admin.*, 465 Fed. App'x 905, 910 (11th Cir. 2012); *Rollins v. Astrue*,
464 Fed. App'x 353, 354 (5th Cir. 2012); *Johnson v. Commissioner of Soc. Sec.*,
398 Fed. App'x 727, 735-36 (3d Cir. 2010); *Williams v. Astrue*, 363 Fed. App'x
498, 499-500 (9th Cir. 2010); *Nicholson v. Astrue*, 341 Fed. App'x 248, 252-53
(7th Cir. 2009); *Overton v. Apfel*, 242 F.3d 376 (Table), 2000 WL 1742082, at *1
(8th Cir. 2000); *Price v. Commissioner of Soc. Sec.*, 113 F.3d 1235 (Table), 1997
WL 210805, at *1 (6th Cir. 1997).

one example, ALJ Wakshul expressly stated that she relied "on . . . Ms. Freeman's limited observations . . . in order to assign her [Orts] to a limited range of sedentary work . . . ." (T. 59).

ALJ Wakshul gave no weight only to the Freemans' outlier forensic conclusions for reasons well stated in her decision and recited again above. ALJ Wakshul did not violate applicable law nor did she exceed her discretion, as courts within this circuit *uniformly* agree that treating source opinion can be rejected when – as here – there is good reason for doing so.[17]

ALJ Wakshul's articulated reasons also are supported by substantial evidence. Consequently, there is no violation of the treating physician rule or any other obvious structural or legal error in ALJ Wakshul's decision. While ALJ Wakshul could have discussed the factors listed in the regulations neatly and in more detail, this shortcoming does not amount to reversible error because the rationale for her decision is clear and her ultimate determination is supported by substantial evidence. *See Petrie*, 412 Fed. App'x at 406-07 (claimant's contention that ALJ failed to consider all relevant factors in giving treating physician's opinion minimal weight without merit because evidence of record permitted court "glean the rationale of [the] ALJ's decision" and "application of the correct legal standard could lead to only one conclusion") (internal citations omitted).

### 2. Nurse Practitioner Freeman's Mental Capacity Assessment

Nurse practitioner Freeman opined that Orts is markedly limited in her ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changed in a routine work setting. (T. 416). When identifying factors supporting that assertion, Ms. Freeman offered only a conclusory

---

[17] *See* cases cited earlier in Section III.*B*.

assertion that Orts "has severe anxiety and unable to leave house due to panic attacks manifested as stomach aches, palpitations, and various complaints, work up has been negative so far." (T. 416).

ALJ Wakshul gave no weight to this opinion because Ms. Freeman "does not possess the specialized knowledge of a psychologist or psychiatrist." (T. 59). Also, ALJ Wakshul mentioned that "the record does not contain the treatment notes, let alone a medical source statement, from the claimant's prior treating psychiatrist, Frances Durgan, M.D." *Id.*

a.    *Rejection of Ms. Freeman's "Other Source" Opinion*

The applicable regulations, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), specifically list both *length of treatment relationship* and *degree of specialization with respect to the condition being treated* as important factors to consider when weighing "other source" medical opinion. ALJ Wakshul considered the lack-of-specialization factor dispositive in the case of Ms. Freeman's opinions regarding Orts's mental capacities.

ALJ Wakshul committed no legal error because Ms. Freeman clearly lacks specialization in the field of mental health, and also because ALJ Wakshul's residual functional capacity finding regarding Orts's mental capacities[18] is supported by opinions of acceptable medical sources who do specialize in that field, *viz.*, Dr. Dennis Noia, Ph.D., (consultative psychologist) and Dr. Inman Dundon, (state agency reviewing psychologist).[19] In addition, Ms. Freeman's

---

[18]    ALJ Wakshul found that Orts can still perform simple, routine, repetitive tasks in a low-stress environment, and can maintain contact with coworkers, supervisors, and the general public. (T. 57).

[19]    Dr. Noia found Orts was fully oriented, and that her attention and concentration were intact. (T. 330). He observed that Orts's recent and remote memory skills were only mildly impaired, and her intellectual functioning was in the average range. (T. 330). Orts was capable of counting, simple calculations, and serial three calculations. (T. 333). Orts could perform simple and some complex tasks independently and with supervision, maintain attention and
(continued...)

treatment notes support ALJ Wakshul's ultimate mental residual functional capacity finding.[20] Finally, Orts's own testimony belies Ms. Freeman's assertion.[21]

### b. *Absence of Psychiatrist Treatment Notes*

Orts argues that legal error occurred when ALJ Wakshul failed to fully develop the record with former psychiatrist, Dr. Durgan's, treatment notes. As an initial matter, ALJ Wakshul asked Orts's hearing counsel if there were any missing evidence, and he responded that there was not. (T. 10, 43-44). At the hearing, Orts's counsel questioned her about treatment for anxiety, and Orts did not mention Dr. Durgan. (T. 32-33). Thus, ALJ Wakshul had no reason to believe that Dr. Durgan's treatment notes were appreciable in effect.

In any event, ALJ Wakshul was able to make a determination based on evidence of record, which included treatment notes from nurse practitioner Freeman, who saw Orts before, during and after Orts's few visits with Dr. Durgan. Additionally, a psychiatric consultative examination by Dr. Noia was conducted in January 2009, at the same time Orts received therapy from Dr. Durgan. (T. 329). Dr. Noia's findings were unremarkable, noting only a "mild" memory problem. (T. 329-30). Further, ALJ Wakshul possessed a review by

---

[19](...continued)
concentration for tasks, attend to a routine and maintain a schedule, learn new tasks, make appropriate decisions, and relate and interact moderately with others. (T. 332). Dr. Noia also recorded that Orts drove on a regular basis. (T.331).

        Dr. Inman-Dundon opined that Orts could perform simple work, and could relate and interact moderately well with others. (T. 360).

[20]     Nurse Freeman opined that Orts was unable to leave the house due to panic attacks, however, her treatment notes reflect otherwise (*e.g.*, going to gym). (T. 290).

[21]     At the hearing, Orts conceded that she drove to the supermarket two days prior to the hearing, and to an ice skating rink about a week prior to the hearing (T. 12), attended her children's parent-teacher conferences (T. 29), and traveled with her son to Florida as part of the Make a Wish foundation (T. 24).

state agency psychologist, Dr. Inman-Dundon. (T. 338-375). Because (a) there were no obvious gaps in treatment, (b) ALJ Wakshul had before her records that spanned the entire relevant period, and (c) neither then nor now is there any indication that Dr. Durgan's impressions differed from those contained in the record,[22] ALJ Wakshul was able to decide the case fairly based on the existing evidence, and was not required to obtain additional information.

B.    *Orts's Subjective Testimony*

ALJ Wakshul summarized the relevant evidence addressing Orts's complaints of pain and other subjective complaints. (T. 57-62). Thereafter, she concluded, in pertinent part:

> . . .the objective medical evidence of record concerning the medically determinable impairments does not fully support the functional limitations ascribed to them by the claimant. This evidence – along with the claimant's activities of daily living, the current medication regimen, the claimant's demonstrated ability to control her symptoms with simple behavior modifications, and the lack of any connection between the claimant's alleged impairments and the sporadic work history prior to 2006 – does not suggest an inability to carry out the demands of unskilled sedentary work on a regular and sustained basis.

(T. 59).

Orts argues that ALJ Wakshul "failed to consider all of the pertinent information" because (a) she did not mention Orts's testimony that she left her last job due to panic attacks, and (b) improperly speculated that Orts's anxiety symptoms were due to Orts's son's leukemia. Orts also argues that ALJ Wakshul improperly discredited Orts's testimony regarding anxiety symptoms

---

[22]    Orts reported seeing Dr. Durgan in December, 2008. (T. 299). The record from the other specialists reflects that during this time, Orts's symptoms were mild. (T. 331). Further, during this time frame Ms. Freeman noted that Orts was stable and doing well on medication. (T. 477-78).

due to inconsistent and only occasional compliance with a prescribed course of treatment because she failed to factor in Orts's financial abilities.

When assessing Orts's credibility and determining her RFC, ALJ Wakshul cited all applicable Regulations and Rulings (T. 57-62) thus indicating her awareness of and intent to follow them. Specifically, she considered the seven specific objective factors identified in the Regulation to the extent there was evidence thereof, engaged in the two-step process as required by the applicable Ruling, and provided explicit reasons for finding Orts's subjective complaints not fully credible, as required by circuit law. (T. 57-58). Thus, there is no obvious structural legal error in ALJ Wakshul's approach to assessing credibility of Orts's subjective testimony regarding persistence, intensity and limiting effects of her symptoms.

Orts's allegations about the intensity, persistence, or functionally limiting effects of her pain or other symptoms are not substantiated by objective medical evidence. (T. 57-62). Orts's physical difficulties did not preclude her from attempting to do "a lot of kneeling and bending" in the installation of a new roof in June 2009. (T. 393). Orts required no prescription medication for pain, but, instead, treated with conservative course of therapy and only a knee sleeve. (T. 394). No cane was prescribed. Further, the pain did not manifest itself by causing gait abnormality or a limited range of motion in either June or September 2009. (T. 393-95, 467).

Orts acknowledged that she does household chores, such as cooking, washing dishes and laundry. (T. 164, 331, 333). She shops and manages money. (T. 331). She cares for her school-aged children. (T. 333). She drives to the supermarket and the ice skating rink. (T. 164, 329, 331). She takes care of her personal needs. (T. 334). Orts can lift two gallons of milk, sit for one to two hours, and stand for thirty minutes at a time. (T. 21-22). These abilities are

consistent with sedentary work with a sit-stand option. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

Orts did not allege mental health difficulties on a frequent basis in 2009 and 2010. (T. 376-410, 450-518). Although she alleged occasional panic attacks in March 2009, at a *gastroenterology* follow-up appointment, she was observed to be alert and oriented, with a normal mood, in November 2009. (T. 478). A field office employee, C. Orlicz, who assisted Orts with her applications for disability over the telephone during that time recorded that Orts had no difficulties with understanding, concentrating, talking, or being coherent, and that Orts was cooperative and well prepared. (T. 60, 136). A psychological consultative examiner, Dr. Noia, reported that Orts gets along well with family and friends. (T. 330-332). These reports contradict Orts's allegations regarding functional limitations related to her anxiety.[23]

Because ALJ Wakshul's credibility determination is supported by substantial evidence, it must be upheld. *See Pietrunti*, 119 F.3d at 1042; *Aponte*, 728 F.2d at 591.

_____

[23] "Orts's remaining arguments are makeweight, scattergun and last-ditch—all of which are unavailing. (Dkt. No. 11, p. 17). Whether ALJ Wakshul erred in making a medical judgment when concluding that Orts's anxiety symptoms may be due to her son's leukemia versus some other stressor is a distinction without a difference. (T. 59-60). The fact that ALJ Wakshul failed to specifically <u>mention</u> that Orts reported leaving her last job due to panic attacks doesn't mean that she did not <u>consider</u> Orts's report. *See Mongeur*, 722 F.2d at 1040 (Where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("failure to cite specific evidence does not indicate that it was not considered."). Further, nothing before Judge Wakshul or this court suggests that Orts's inconsistent and occasional compliance with prescribed treatment is due to lack of income. These hindsight errors, if any, do not warrant reversal and remand.

## VIII.   Recommendation

The Commissioner's decision denying disability-based benefits should be **AFFIRMED**.

## IX.   Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___14___ day of ___November___ 2012.

*Earl S. Hines*

Earl S. Hines
United States Magistrate Judge